RICHARD L. PIERCE, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

113 N. W. 2d 333

Filed February 9, 1962. No. 35102.

McGinley, Lane, Mueller & Shanahan, for plaintiff in error.

Clarence A. H. Meyer, Attorney General, and Cecil S. Brubaker, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

The defendant was convicted by a jury in the district court for Keith County of operating a motor vehicle while under the influence of alcholic liquor. He prosecutes error to this court. Defendant lists 15 assignments of error. We will discuss only those we deem of sufficient importance to merit consideration.

The first assignment of error involves the admission, over objection, of an opinion by a witness for the State that the defendant was drunk. Actual observations on the part of a witness are an essential part of his opinion on intoxication, and in the usual and regular course such facts must be proved as a foundation. In the area of intoxication, without qualifying as an expert on the subject, a witness who has actual knowledge and sufficient observation of an occurrence should be allowed to supplement his description by his opinion. In this case, the witness, although he was 75 to 100 feet away, did have an opportunity to observe the defendant for more than 5 minutes. He observed some unusual actions; he observed defendant wobbling around; and he observed the state of defendant's clothes. We find that there was, in this instance, a sufficient observation for the expression of an opinion. The question of the credibility of this witness was for the jury.

Defendant next complains that the trial court committed prejudicial error in refusing to strike an unresponsive answer of Ralph Robb, a witness for the State. The question, answer, and objection are as follows: "Q. Can you tell the jury how he walked? A. Oh, he just wobbled around there, just like a drunk would. MR. SHANAHAN: We object to that and move that it be stricken as an unresponsive answer, and the jury instructed to disregard it. THE COURT: No; overruled." Part of the answer was responsive. The objection was a general one, directed against the entire answer. If the motion to strike had been properly limited, it should have been sustained. It was not limited, so the objection was properly overruled.

We said in Missouri Pacific Ry. Co. v. Fox, 60 Neb. 531, 83 N. W. 744: "Where an answer is not responsive to the question, it should be reached by motion to strike out." In Fouse v. State, 83 Neb. 258, 119 N. W. 478, we said: "An answer responsive to a question should not be stricken from the record." We now say that an answer partly responsive cannot be stricken by a motion to strike the entire answer. The motion must be limited to the portion which is not responsive.

The third assignment of error concerns the restriction of the cross-examination of Fuller, an Ogallala police officer, regarding the availability of chemical tests in connection with the alcoholic content of body fluids. On direct examination, Fuller, after testifying to asking the defendant for a blood alcohol test and his refusal to take it after the arrival of a hospital technician, testified as follows: "Q. And did he take a test at any time? A. No. Q. Was that for the purpose of determining his sobriety or intoxication? A. Yes. * * * Q. Did you make any other tests for the purpose of ascertaining whether he was under the influence of alcoholic liquor? A. No; just observing him is all."

On cross-examination of officer Fuller, the existence of other tests, suggested by the county attorney on di-

rect examination, was the subject of inquiry in the following respects: "Q. Just what other tests do you have available to test the alcoholic content of blood? MR. FELTZ: Objected to as incompetent, irrelevant and immaterial. THE COURT: Yes, sustained."

In the eighth assignment of error, defendant complains of the restriction of the cross-examination of officer Fuller concerning defendant's removal to the local hospital. The direct examination of officer Fuller was as follows: "Q. Now then do you have knowledge of the defendant being admitted to the Ogallala hospital that day? A. Yes, I do. Q. And do you know what hour he was admitted to the Ogallala hospital? A. Around 4 o'clock P. M. Q. That was the same afternoon of the same day? A. Yes. * * * Q. Were you present when he was removed from the jail to the hospital? A. Yes. * * * Q. It was about four and one-half hours from the time you took him in your custody until he was removed to the hospital, would that be correct? A. Yes, approximately." The objections which were sustained on cross-examination are as follows: "Q. Officer, was Mr. Pierce removed from the Keith County jail under doctor's orders? MR. FELTZ: Objected to as incompetent, irrelevant and immaterial; calling for a fact not in evidence and a conclusion of this witness—improper cross examination. THE COURT: Yes; sustained. Q. All right. Did you voluntarily remove him from the jail? MR. FELTZ: I will object to that as calling for a conclusion of the witness. THE COURT: Yes, sustained."

The record indicates that on direct examination Fuller was interrogated by the county attorney as to Pierce's physical condition, as follows: "Q. And was there any complaint made to you at that time by the defendant as to any physical disability or suffering—? A. I don't believe, at that time. * * * Q. And was there any complaint made to you by the defendant about his physical condition? A. Yes, I believe there was. Q. When

was that? A. At the sheriff's office. Q. And what was the complaint? A. He complained that he was sick and he had tried to vomit a couple times." Defendant, in his thirteenth assignment of error, assigns as error the restriction on cross-examination directed at this testimony, as follows: "Q. Did you ever attempt to ascertain whether he was sick? MR. FELTZ: Object to that as not within the issues of this case. THE COURT: Yes; sustained."

In the twelfth assignment of error, defendant complains of the restriction of the cross-examination of officer Sauer as to the presence of a physician at the time the accused was requested to take a blood test. In his direct examination, officer Sauer was examined about the circumstances and occurrences at the sheriff's office relating to a request for a blood test and the bringing of a hospital technician to draw the blood. On cross-examination, we find the following: "Q. You got into some testimony about the blood test here which you were going to give to this fellow. You didn't have a doctor there, did you, at any time that he was requested to take the blood test? MR. FELTZ: Object to that as argumentative, your Honor. THE COURT: Yes; sustained."

There is no question but that the scope of cross-examination of a witness rests largely in the discretion of the trial court, and its ruling will be upheld unless an abuse of that discretion is shown. Garcia v. State, 159 Neb. 571, 68 N. W. 2d 151.

With the exception of the twelfth assignment of error, where the question was so framed as to be argumentative, it would appear that the questions asked the witnesses for the State on cross-examination, to which objections were sustained, were reasonably within the scope of the direct examination.

In Sherrick v. State, 157 Neb. 623, 61 N. W. 2d 358, we quoted the following from 58 Am. Jur., Witnesses, § 632, p. 352: " 'Generally speaking, however, when the

direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts which constitute a unity, or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief by the witness on cross-examination.'"

We believe the rule in Sherrick v. State, *supra*, is applicable in this case, and find that the defendant was too severely restricted in his cross-examination, and while this was error, we do not feel that in and of itself it was prejudicial error.

Defendant's fourth assignment of error is directed to the testimony of a police officer, over objection, that the defendant offered no explanation or reason for not submitting to the withdrawal of his blood when there had been no accusation of intoxication leveled against the defendant, and where there had been no inquiry by the officer concerning the defendant's reasons for not submitting to the withdrawal of his blood. In this regard, defendant also calls attention to the fact that there is no testimony in this record that the police officers had complied with the statute relating to the withdrawal of a blood sample.

Officer Fuller testified that he asked the defendant for a blood alcohol test, and the defendant agreed to give one, but that when he secured a hospital laboratory technician, defendant refused to give it. Officer Sauer testified to bringing the technician to the sheriff's office and to the defendant's refusal to take the test. Sauer, on direct examination, was then asked: "Q. Did he make any statement in your presence as to his reason for

not giving such a sample? MR. SHANAHAN: Object to the line of questioning as highly improper, irrelevant, incompetent, and immaterial. I think I will move for a mistrial. THE COURT: Objection overruled. Q. You may answer the question. * * * A. No." It is defendant's position that the mere silence of one under arrest or in custody without an accusation is not an admission of guilt, and that the failure to volunteer exculpatory statements is not admissible evidence against an accused. It is his position that the trial court's admission of the officer's testimony over objection indicated that silence without an accusation was an admission of some nature and therefore was evidence to be considered by the jury.

It is true that unexplained silence in the face of an accusation may support an inference of guilt. Where, on being accused of crime, with full liberty to speak, one remains silent, his failure to reply or to deny is admissible in evidence as an admission by silence. See the cases collected in 22A C. J. S., Criminal Law, § 734(1), p. 1068, note 30.55.

The question here, however, infers that an inquiry has been made of the defendant as to his reason, or that he had been asked for an explanation, and that he failed to give one. This is not true. No such inquiry was made of the defendant. It is therefore his failure to volunteer a reason which is involved. We also have a situation where the record does not affirmatively show any accusation. The defendant, however, was taken to the sheriff's office, and undoubtedly was aware of the reason, but nowhere in the record previous to the time of the challenged testimony, was any direct accusation made to or against him. We do not consider the absence of an accusation controlling under the circumstances. However, the effect of the ruling is to admit the officer's testimony on the theory that the silence of the defendant, or, more properly, his failure to give a reason when none was requested, was an admission of

guilt, or, at the very least, a circumstance indicating guilt. There is no question it would be so considered by the jury. This appears to be carrying the doctrine of silence a step too far. To require a defendant to anticipate the nature of an accusation and to require him to give reasons without inquiry is to make a farce of the presumption of innocence. Nebraska has gone further than many jurisdictions on the criteria of silence as an admission, but it is still the rule in Nebraska that in the absence of a duty to speak, silence is not an admission. See the discussion in O'Hearn v. State, 79 Neb. 513, 113 N. W. 130, 25 L. R. A. N. S. 542. To allow a prosecutor to explore the silence of the accused or the failure of the accused to explain why he does not offer evidence against himself, when the circumstances are such that there is no occasion to explain, is to fasten on the accused a presumption of guilt and to make a mockery of his presumption of innocence, which certainly is contrary to our fundamental law.

Defendant's fifth assignment of error concerns the comment of the county attorney in his closing argument to the jury on the refusal of the accused to submit to an alcohol blood test or chemical analysis. Proper objection was made by the defendant at the time of the statement, together with a request for an order declaring a mistrial. The objection and the request were overruled. Passing for the moment the fact that the evidence indicated that only a blood test was requested, this occurred in the presence of the jury during argument, and emphasized the claim of the prosecution that the defendant's failure to take a test was an important factor to be considered by the jury.

The defendant tendered instruction No. 13 which the trial court refused to give, and which the defendant in his tenth assignment of error contends constitutes prejudicial error. This instruction correctly states the provisions of the law as set out in section 39-727.04, R. R. S. 1943. If this instruction had been given in some

form, the defendant's theory would have been before the jury. In view of the injection of the issue of the failure to take a fluid test into the evidence, and the argument of the county attorney, defendant was entitled to the tendered instruction in some form. As it was, the defendant was prevented from showing by his cross-examination of the witnesses who testified as to the refusal to take a blood test that the law had not been complied with. On the record in this case, even if a test had been made, under our holding in Otte v. State, 172 Neb. 110, 108 N. W. 2d 737, it could not have been received in evidence over objection. The State would have been required to show compliance with section 39-727.04, R. R. S. 1943.

Referring again to the final argument of the county attorney, the record reflects that the county attorney argued not only the failure of the defendant to give an alcohol blood test, but also a chemical analysis test which would embrace the analysis of a sample of urine. The record affirmatively shows that no urine test was ever offered to or requested from the defendant. The restrictive cross-examination and the failure to give an instruction on the defendant's theory deprive the defendant of a substantial right in view of the conduct of the prosecuting attorney.

The sixth and seventh assignments of error relate to the admission of certain rebuttal testimony. Briefly it pertains to a police officer testifying as to a conversation with Donald L. Criswell, one of defendant's witnesses, which conversation took place out of the presence and hearing of the defendant. The pertinent testimony is as follows: "Q. Do you recall what Donald L. Criswell said to you about the condition of Richard Pierce? A. Yes. Q. State the conversation—state the statement. MR. SHANAHAN: We object to this as being out of the presence of the accused. It is incompetent, irrelevant and immaterial; hearsay; it violates almost every rule we have. THE COURT: It will

be received for the purposes of impeachment only. A. He said—Don Criswell—that he was in no shape to be driving."

The general rule is stated as the headnote to section 746, 22A C. J. S., Criminal Law, p. 1106: "Statements by third persons which are not made in accused's presence, and which are not declarations of a co-conspirator nor a part of the res gestae, are generally not admissible." There is no reason in this case why the general rule should not apply. The objection was clearly a proper one and should have been sustained.

It is suggested that the evidence may properly be received for impeachment purposes. The subject of defendant's driving was not covered in the county attorney's examination of Criswell, nor was there any showing of a prior inconsistent statement. The pertinent testimony relating to the point on cross-examination is as follows: "Q. Did you talk with the Chief of Police when he answered the call or came up there? A. I talked with him and Sauer there; yes, sir. Q. And you told the Chief of Police Dick was in bad shape at that time, didn't you? A. I said he was in bad shape, yes. I didn't think he was intoxicated or drunk; I meant he didn't feel good."

No attempt of any nature was made to lay a foundation for impeachment. The following principles are applicable: "Before a witness, not a party to the suit, can be impeached by proof that he has made statements contradicting or differing from the testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements." Meyers v. State, 112 Neb. 149, 198 N. W. 871. See, also, Bartek v. Glasers Provisions Co., Inc., 160 Neb. 794, 71 N. W. 2d 466.

The State suggests that defendant's objection did not include an objection to any lack of foundation for impeachment. The objection as made was good when made. It was the trial court who, without any sug-

gestion that the testimony was being offered for that purpose, said it would be received for impeachment purposes. Under these circumstances, a proper objection to foundation for impeachment should then have been made.

The defendant, in his ninth assignment of error, complains of the failure of the court to give his tendered instruction No. 4 in some form. The tendered instruction is as follows: "If, upon a consideration of the evidence by you, the evidence or any material part thereof is susceptible of two constructions, one being in favor of the Defendant, Richard Pierce, the doubt must be resolved in behalf of the innocence of the Defendant and every inference under the evidence must be considered in its entirety and construed in favor of Richard Pierce, the Defendant."

We said in Bourne v. State, 116 Neb. 141, 216 N. W. 173: "* * * if the evidence or any material part thereof is fairly susceptible of two constructions, one in favor of the state, and the other in favor of the defendant, the doubt must be resolved in behalf of the innocence of the accused, as every intendment or inference under the evidence, considered in its entirety, must be construed in his favor." We also said in Jeppesen v. State, 154 Neb. 765, 49 N. W. 2d 611: "* * * any fact or circumstance reasonably susceptible of two interpretations must be resolved most favorably to the accused." The tendered instruction substantially states the present rule in this jurisdiction and when tendered should have been covered in some form. When instructions are tendered which correctly state the law upon an issue involved, refusing them is error unless the points are fairly covered by the instructions given by the court on its own motion. Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501.

Defendant's eleventh assignment of error complains of the failure of the trial court to give tendered instruction No. 17 which directed the jury to disregard all in-

ferences to be drawn from the testimony relative to fluid tests. What was said on the tenth assignment of error relative to an instruction in some form on the defendant's theory is applicable here.

Many of the errors assigned by the defendant standing alone would be errors without prejudice, but in combination must be held to be prejudicial errors. It is the purpose of this court to protect and not to encourage the violation of a defendant's rights, and we do not intend to speculate on whether prejudice has resulted where those rights are violated. Quoting from Bruntz v. State, 137 Neb. 565, 290 N. W. 420: "If we treat violations indulgently, we shall soon — in the words of Pope — 'first endure, then pity, then embrace.'"

We have said that public prosecutors are charged with the duty of conducting criminal trials in such a manner that the accused may have a fair and impartial trial. Cooper v. State, 120 Neb. 598, 234 N. W. 406. Viewing the record as a whole, we cannot say that the defendant in this case has had such a trial.

For the reasons given above, the judgment is reversed and the cause remanded to the district court for a new trial.

REVERSED AND REMANDED.